

**SO ORDERED.**

**SIGNED this 08 day of February, 2013.**

_____
Stephani W. Humrickhouse
United States Bankruptcy Judge
_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| BRIER CREEK CORPORATE CENTER ASSOCIATES LIMITED PARTNERSHIP, et al. | 12-01855-8-SWH |
| DEBTOR | |
| BRIER CREEK CORPORATE CENTER ASSOCIATES LIMITED PARTNERSHIP, AAC RETAIL PROPERTY DEVELOPMENT AND ACQUISITION FUND, LLC, BRIER CREEK OFFICE #4, LLC, BRIER CREEK OFFICE #6, LLC, CARY CREEK LIMITED PARTNERSHIP, SERVICE RETAIL AT BRIER CREEK, LLC, SERVICE RETAIL AT WHITEHALL II LIMITED PARTNERSHIP, SHOPTON RIDGE BUSINESS PARK LIMITED PARTNERSHIP, SHOPTON RIDGE 30-C, LLC, WHITEHALL CORPORATE CENTER #5, LLC, WHITEHALL CORPORATE CENTER #6, LLC, AMERICAN ASSET CORPORATION COMPANIES, LTD., WHITEHALL CORPORATE CENTER #4, LLC | ADVERSARY PROCEEDING NO.<br><br>12-00121-8-SWH-AP |
| Plaintiffs | |
| v. | |
| BANK OF AMERICA, N.A. | |
| Defendant. | |

## ORDER DENYING MOTION TO ABSTAIN AND
## REGARDING MOTION TO COMPEL ARBITRATION

The matters before the court in this adversary proceeding are the motion to abstain and motion to compel arbitration filed by Bank of America. A hearing took place in Raleigh, North Carolina, on November 29, 2012.

Brier Creek Corporate Center Associates Limited Partnership, along with eight other related entities (collectively, "the debtors"), filed petitions for relief under chapter 11 of the Bankruptcy Code on March 9, 2012.[1] Prior to the filing of the petitions, the debtors, along with five other entities, filed a complaint against Bank of America, N.A. (hereinafter, "BOA") in Mecklenburg County Superior Court on October 13, 2011.[2] Plaintiffs have a loan portfolio in excess of $100 million with BOA, secured by commercial real property located in Mecklenburg and Wake Counties. The complaint contains 15 causes of action including contract and tort claims, arising from the plaintiffs' loans and other financial transactions with BOA. In response, BOA filed counterclaims alleging breaches of contract.

---

[1] The debtors in this case, which was procedurally consolidated on March 23, 2012, include the following: Brier Creek Corporate Center Associates Limited Partnership (designated as the lead case); Brier Creek Office #4, LLC; Brier Creek Office #6, LLC; Service Retail at Brier Creek, LLC; Service Retail at Whitehall II Limited Partnership; Shopton Ridge 30-C, LLC; Whitehall Corporate Center #4, LLC; Whitehall Corporate Center #5, LLC; Whitehall Corporate Center #6, LLC, and, as of January 10, 2013, Cary Creek Limited Partnership. Cary Creek Limited Partnership was formerly a non-filing affiliated entity, but filed a voluntary petition on January 3, 2013. Its case was consolidated with the debtors' cases, for procedural purposes only, by order dated January 10, 2013.

[2] The other affiliated entities are: Shopton Ridge Business Park Limited Partnership; AAC Retail Property Development and Acquisition Fund, LLC; American Asset Corporation Companies Limited; and American Asset Corporation. Cary Creek Limited Partnership (discussed above in note 1) was the fifth affiliated entity and is now a debtor in the consolidated case.

The case was subsequently transferred for adjudication to the North Carolina Business Court, although venue remained in Mecklenburg County Superior Court. On May 7, 2012, the state court action was removed to the United States Bankruptcy Court for the Western District of North Carolina, and on June 19, 2012, the present adversary proceeding was initiated upon the transfer of the case to this court.

Several motions were pending upon the court's receipt of the case, including BOA's motions (1) to withdraw reference of the case to the bankruptcy court, which was presented to the district court; (2) for the bankruptcy court to abstain from hearing the present case and remand the matter to the North Carolina Business Court; and (3) to compel arbitration of the debtor/plaintiffs' claims and certain of BOA's counterclaims. On September 27, 2012, the district court in its discretion declined to permissively withdraw the reference, and denied the motion on grounds that the circumstances of this case[3] weighed against withdrawal. ACC Retail Prop. Dev't Acquisition Fund, LLC v. Bank of Am., Case No. 5:12-CV-361-BO (E.D.N.C. Sept. 27, 2012).

**I.    Motion to Abstain and Remand**

The motion to abstain and remand is similar in many respects to BOA's motion to withdraw the reference, in which it argued to the District Court for the Eastern District of North Carolina that the plaintiffs' claims and defendants' counterclaims "are not core proceedings that arise in or under a title 11 bankruptcy proceeding and the bankruptcy court is without constitutional authority to make a final adjudication of these matters." Id. (slip op. at 2).

---

[3]Factors relevant to permissive withdrawal include 1) whether the proceeding is core or non-core; 2) the uniform administration of bankruptcy proceedings; 3) expediting the bankruptcy process and promoting judicial economy; 4) the efficient use of the resources of the debtors and creditors; 5) reduction of forum shopping; and 6) preservation of the right to a trial by jury. Id. at 3, citing Vieira v. AGM, II, LLC, 366 B.R. 532, 537-38 (D.S.C. 2007) (quotations omitted).

BOA's arguments in support of both mandatory and permissive abstention likewise rely on its assertion that the debtor/plaintiffs have not set forth core claims upon which jurisdiction can rest. Mot. of BOA for Mandatory Abstention Pursuant to 28 U.S.C. § 1334(c)(2) or, in the alternative, Permissive Abstention, A.P. No. 12-03114 (Bankr. W.D.N.C. May 25, 2012) (removed to and filed in this court on June 19, 2012). Because, based upon the reasons set forth below, the court holds that two of the claims are in fact core claims that must be determined in the course of the bankruptcy proceedings, this court is neither required nor persuaded to abstain. Accordingly, upon full review of the authorities offered by BOA in support of its motion for mandatory or permissive abstention, the court discerns no basis upon which it must or should abstain in this matter, and that motion will be denied.

## II.     Motion to Compel Arbitration

BOA contends that all of the debtors' claims, as well as BOA's counterclaims, including those against non-debtor plaintiffs AAC Retail Property Development & Acquisition Fund, LLC, and American Asset Corporation Companies, Ltd. (both guarantors), are within the scope of the various arbitration agreements between the parties. With regard to some claims, the plaintiffs agree that arbitration is appropriate; with respect to others, they do not, and those disputes are presently before the court.

### A.     The Claims

The complaint consists of the following fifteen claims, grouped below according to their current status as either arbitrable, per agreement of the parties; potentially subject to arbitration in part, per agreement of the parties; moot, per agreement of the parties; or in dispute as to whether they must or can be arbitrated, as follows:

Arbitrable claims:

    4.     Slander of Title
    7.     Tortious interference with business relations
    10.    Frustration of commercial purpose (swap transactions)
    11.    Breach of agreement to provide financial services (swap transactions)
    12.    Negligent misrepresentation (swap transactions)
    13.    Breach of implied duty of good faith and fair dealing (swap transactions)

Arbitrable claims, *in part*:

    14.    Violation of N.C. Gen. Stat. 75-1.1 (misrepresentations in swap transactions)
    15.    Constructive fraud (in context of swap transactions)

The parties agree that these claims are arbitrable to the extent that they pertain to the dispute centered on the swap transactions. Because the claims are not wholly based on the swap transactions, there is disagreement on the extent to which the claims may be "core."

Moot claim:

    6.     Request for temporary restraining order and preliminary and permanent injunctions

The parties agreed at the hearing on November 29, 2012, that this claim is now effectively moot, given that the claim was heard and denied in state court. This court will not further address Claim 6.

Claims as to which arbitrability is in dispute:

    1.     Breach of contract (failure to fund draw requests)
    2.     Breach of contract (June 2010 forbearance)
    3.     Misrepresentation
    5.     Breach of implied duty of good faith and fair dealing
    8.     Fraudulent inducement
    9.     Breach of fiduciary duties
(And, in part, aspects of Counts 14 and 15, as noted above)

Thus, six claims are the primary subject of this order. The court will discuss each in turn, then briefly address the still-outstanding aspects of claims 14 and 15.

### B.     Federal Arbitration Policy

Arbitration provisions "generally are favored in federal courts. In bankruptcy proceedings, however, whether a proceeding is a 'core proceeding' as defined by 28 U.S.C. § 157(b) generally determines whether an arbitration clause can be enforced." D&B Swine Farms, Inc. v. Murphy-Brown, LLC, 430 B.R. 737, 741 (Bankr. E.D.N.C. 2010) (citing White Mountain Mining Co., LLC v. Congleton, LLC, 403 F.3d 164, 169 (4th Cir. 2005) and Blanchard Transp., 2008 WL 619379 at *1 (Bankr. E.D.N.C. 2008)). More particularly, in the Fourth Circuit, controlling precedent establishes that "[a]rbitration is inconsistent with centralized decision-making because permitting an arbitrator to decide a core issue would make debtor-creditor rights 'contingent upon an arbitrator's ruling' rather than the ruling of the bankruptcy judge assigned to hear the debtor's case." White Mountain, 403 F.3d at 169 (internal citation omitted), quoted in D&B Swine Farms, 430 B.R. at 741.

In the bankruptcy context, "the burden is on the party opposing arbitration to show that Congress intended to 'limit or prohibit waiver of a judicial forum for a particular claim' under the Federal Arbitration Act." D&B Swine Farms, 430 B.R. at 741, construing Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987) (as quoted in Blanchard Transp., 2008 WL 619379 at *1). Thus, if the matter is non-core, it is generally "referred to arbitration consistent with the policy in favor of arbitration; however if a core proceeding is at issue, the policy in favor of centralized determination in the bankruptcy court generally prevails." TP, Inc. v. Bank of Am., N.A., 479 B.R. 373, 382 (Bankr. E.D.N.C. 2012).

The court's immediate inquiry is the extent to which the challenged claims are "core." After the Stern decision, a bankruptcy court cannot simply look to section § 157(b) to determine whether it has the authority to enter a final order in a core proceeding. Stern v. Marshall, 131 S. Ct. 2594, 2604 (2011); see also In re Somerset Properties SPE, LLC, 2012 WL 3877791 (Bankr. E.D.N.C. 2012) (discussing extent to which claims and counterclaims in proceeding were statutorily core, as distinguished from constitutionally core, in light of Stern). In Stern, the Supreme Court found that while bankruptcy courts have the *statutory* authority to enter final judgments on a debtor's counterclaim pursuant to the plain language of § 157(b)(2)(C), bankruptcy courts may not *constitutionally* enter final orders in non-bankruptcy matters that are based in common law or state law, or that would not necessarily be resolved in the claims allowance process in bankruptcy. Stern, 131 S. Ct. at 2609, 2620; Yellow Sign, 466 B.R. at 767; Oxford Expositions, LLC v. Questex Media Group, LLC (In re Oxford Expositions, LLC), 466 B.R. 818, 829 (Bankr. N.D. Miss. 2011). Thus, counterclaims based in state law are considered "core" if resolution of the counterclaim is necessary to the determination of whether, or to what extent, a creditor's claim should be allowed in a bankruptcy case. Spanish Palms Mktg, LLC v. Kingston (In re Kingston), 2012 WL 632398 at *2 (Bankr. D. Idaho Feb. 27, 2012); see also City of Sioux City v. Civic Partners Sioux City, LLC (In re Civic Partners Sioux City, LLC), 2012 WL 761361 at *8-10 (Bankr. N.D. Iowa Mar. 8, 2012) (explaining that Stern did not completely eliminate state-law counterclaims by the estate from being a core proceeding, but rather provided guidance on how broadly these counterclaims could reach without exceeding constitutional limitations).

In this proceeding, the specific claims at issue may constitute "core"claims if they come within Stern's second prong; *i.e.*, whether these claims must "necessarily be resolved in" the claims allowance process. Stern, 131 S. Ct. 2618. With regard to the disputed claims[4] (Claims 1, 2, 3, 5, 8 and 9), the debtor/plaintiffs argue that these are core claims within the meaning of "both section 157(b)(2)(C)as a 'counterclaim by the estate against persons filing claims against the estate' and section 157(b)(2)(B) as a matter concerning the 'allowance or disallowance of claims against the estate.'" Pls.' Response Br. in Opp. to Defs.' Mot. to Compel Arbitration at 4 ("Plaintiffs' Response"). The claims may bear on the debtors' ability to confirm a plan, plaintiffs argue; and, in addition,"the remainder of Plaintiffs' Claims, including those which would not necessarily be resolved by an objection to Bank of America's proofs of claim as filed and those claims which also involve non-debtors, including Defendant's Counterclaims seeking to collect against alleged non-debtor guarantors, are intimately intertwined with the operative facts for the core claims. It would be exceedingly inefficient and possibly lead to inconsistent results to send those claims and/or the non-debtors to arbitration." Id.

In response, BOA contends that none of these claims are core. Even though BOA filed a proof of claim in each of the debtor/plaintiffs' bankruptcy cases, it argues, "the claims at issue in this adversary proceeding will not be resolved in the allowance or disallowance of BOA's proofs of claims." BOA Reply Brief at 13. BOA argues that even if the claims were statutorily core, none of the six claims listed above satisfy the "constitutionally core" analysis developed in Stern. In particular, BOA asserts, and the court agrees, that the claims "do not satisfy the first prong of Stern

---

[4] The court will deal separately with Claims 14 and 15, with regard to which the parties agree that some portions are arbitrable.

because all of the claims arose pre-petition and are based on state law." The court also agrees with BOA that "the issue before this Court is whether the claims would necessarily be resolved in the claims allowance process." Id. at 14.

Accordingly, the court will examine the claims with both the statute and the second Stern prong in mind, pursuant to which courts "generally look to see if a 'common nucleus of law and fact' exists to inextricably intertwine the claims and counterclaims." Somerset, 2012 WL 3877791 at 8. Put in more practical terms, this means that "a counterclaim by the estate based in state law must seek to directly reduce or recoup the amount claimed in order to be resolved in ruling on the proof of claim." Id. In contrast, if the claim is instead "a counterclaim by the bankruptcy estate that seeks affirmative monetary relief to augment the estate but does not *directly modify the amount claimed*," it will not come within the parameters of a claim that is necessarily resolved in ruling on the proof of claim. Id. (emphasis added). With these standards in mind, the court turns to the six claims at issue.

**Claims 1 and 2**

Plaintiffs' Position

Both Claims 1 and 2 set out breach of contract claims by the debtor/plaintiffs against BOA in connection with BOA's alleged failure to fund draw requests and its alleged breach of a June 2010 forbearance agreement. The debtor/plaintiffs argue that these claims set out "breaches of contract of the very loans which form the basis of the proofs of claim" and are inextricably intertwined with BOA's proofs of claim. In both claims, plaintiffs contend that BOA's breach of the loan documents is sufficiently material to excuse further performance by the plaintiffs: More specifically, plaintiffs argued that BOA breached its agreement to fund draw requests (Count 1), such that the plaintiffs'

9

loans should not be considered to be in default, and also breached the June 2010 forbearance agreement (Count 2) when it failed to honor its agreement to allow plaintiffs to defer monthly payments. See Complaint ¶¶ 170; 193-208.

In addition to asserting that rescission and cancellation of future contractual performance would be appropriate relief, plaintiffs contend that determining whether the loans are even *in* default and, if so, from what point in time, are crucial to determining the amount of BOA's claims. This is so, plaintiffs maintain, because the existence and timing of any default under the loan agreements determines whether BOA's proofs of claim may include default-based components for interest, attorneys' fees, and other associated expenses, which in this case would constitute significant sums. See generally Letter to The Hon. Stephani W. Humrickhouse from David S. Melin (January 25, 2013).

BOA's Position

In response, BOA's baseline argument is that these claims are not "core." The complaint does not assert grounds for rescission, BOA argues, because there is no allegation that the loan documents were invalid at their inception or that BOA's alleged misconduct occurred at that time, and there likewise is no possibility of restoring the status quo. Instead, at issue are simple breach of contract claims of the sort that are resolved by awards of damages, not rescission or an excuse of performance.

BOA also characterizes the plaintiffs' arguments as resting primarily on the fact that both the plaintiffs' and BOA's claims are based on the same loan documents. That reliance, BOA suggests, was recently considered and rejected by this court in Somerset. In that case, the court reasoned as follows:

> Even though the claims arise out of the same documents, the court does not believe these alleged breaches of the [loan documents] are inextricably intertwined with, and would necessarily be resolved in, the claims allowance process. Although it is difficult for courts to predict the nature of the claims in the adversary proceeding, the court does not believe this claim for breach is capable of relieving Somerset's obligations under the contract. Because Somerset would not be relieved of its obligations under state law, the Lenders' claims would not be directly altered and this counterclaim would not necessarily be resolved in the claims allowance process.

BOA Reply Brief at 16 (quoting Somerset, 2012 WL 3877791 at 9) (internal quotations omitted). The bottom line, BOA argues, is that the debtor's counterclaims seek merely to augment the estate.

In addition, BOA recently supplemented its filings with an emailed letter briefing the question of "whether any claims for relief that Plaintiffs asserted in the above-captioned adversary proceeding would permit the Plaintiffs to contest the validity of BOA's loan documents and, by extension, cause those claims to be constitutionally core proceedings." Letter to The Hon. Stephani W. Humrickhouse from George F. Sanderson at p. 1 (January 18, 2013). That letter focused primarily on the extent to which the plaintiff/debtors' demands, in the first and second claims in the adversary proceeding, to have "their further performance under the Borrowers' Loans excused and for the cancellation of all deeds of trust and other security interests encumbering the real property pledged under the ACC Entity Loans," could constitute a claim for rescission or otherwise attack the validity of the "loans and/or alter the secured status of BOA's claims." Id.

Discussion

To simplify matters, the court can readily agree with BOA that the plaintiffs' pleadings do not currently establish grounds to rescind the parties' contracts, to excuse further performance on grounds of mistake at the contracts' inception, or to support cancellation of all deeds of trust or other security interests. The plaintiffs' stronger argument, and the one that ultimately persuades the court, is their assertion that whether BOA's alleged breaches of the contract operated in such as way as to

11

preclude the debtors from ever being in default under the terms of the parties' agreements *must* be resolved in order for the court to determine the amount of BOA's claim. These questions arose, in the plaintiffs' underlying bankruptcy case, in the context of the court's efforts to resolve the debtors' objections to BOA's claims. See In re Brier Creek Corp. Center Assoc. Ltd. P'ship, Case No. 12-01855-8-SWH, slip op. at pp. 6 n.5 (attorney fees), 13-14 (attorney fees and late fees), 16-18 (appraisal costs) (Bankr. E.D.N.C. Jan. 18, 2013).

As this court previously has pointed out, "the ruling in Stern does not prohibit the estate from bringing core counterclaims based in state law so long as the resolution of the counterclaim is necessary to the determination of whether a creditor's claim should be allowed in a bankruptcy case." Somerset, 2012 WL 3877791 at *4. For a counterclaim to be "necessarily resolved in ruling on the proof of claim, the relationship must be such that resolution of the counterclaim would alter the amount sought by the claimant." Id. at *8 (citing In re Old Prairie Block Owner, 457 B.R. 692, 698-99 (Bankr. N.D. Ill. 2011)). "In other words," this court said in Somerset, "a counterclaim by the estate based in state law must seek to directly reduce or recoup the amount claimed in order to be *resolved in ruling on the proof of claim*. Applying this type of test, a counterclaim by the bankruptcy estate that seeks affirmative monetary relief to augment the estate but does not directly *modify the amount claimed* would not qualify as a claim to be resolved in ruling on the proof of claim." Id. (emphasis added).

The plaintiffs assert in Claim 1 that BOA "had an obligation to fund construction draw requests and deal costs for payment of general contractors, real estate brokers, and tenant improvements/upfits relating to [BOA's] collateral under the [loans]." Complaint ¶ 195. BOA, in its answer and in regard to plaintiffs' claim that BOA breached an obligation to fund draws,

12

repeatedly and unhelpfully notes that "Borrowers' Loan Documents are in writing, speak for themselves, and are the best evidence of their contents." Answer ¶¶ 165-76. The loan documents obligate BOA to fund draws, but its obligation to lend appears to expire and terminate "automatically upon the occurrence of a Default." See, e.g., BOA Motion to Compel Arbitration, Ex. E (Construction Loan Agreement ¶ 1.3). Thus, a determination of default is essential in the resolution of Claim 1 for breach of contract. That same determination regarding default will provide necessary inputs into a final resolution of BOA's proof of claim, i.e. the attorneys fees, interest, and late fees components.

The plaintiffs assert in Claim 2 that BOA breached a June 2010 Forbearance Agreement by calling a default of the loans when the plaintiffs ceased making payment to BOA, which plaintiffs allege was in accord with the Forbearance Agreement. Again, the existence and timing of default, essential to the proof of claim analysis, will be determined in the resolution of this claim for relief.

In this proceeding, it would not be wholly correct to state that the claims allowance process will determine these two AP claims; however, the inverse is true. A determination of these AP claims will, necessarily, affect the claims allowance process, and is in fact necessary to a final resolution of the amount of BOA's claims. See also, e.g., Spanish Palms Mktg., LLC v. Kingston (in re Kingston), 2012 WL 632398 at *2 (Bankr. D. Idaho Feb. 27, 2012) ("Because the resolution of costs and damages issue is tied to the claim allowance issue, the Court has the constitutional authority to decide the costs and damages issue as well."). The court concludes that both breach of contract claims satisfy the second prong of Stern and are constitutionally core claims which this court may hear and determine. Claims 1 and 2 will not be referred to arbitration.

**Claims 3, 5, 8, and 9**

The plaintiffs' Claim 3 alleges misrepresentation by BOA, in that BOA allegedly led plaintiffs to believe that BOA would "a) not require debt service on the Debtors' loans; b) fund construction draw requests related to the Debtors' loans; c) not declare a maturity default under the Debtors' Loans; d) amend the BC#4 loan; and e) not market Debtors' loans for sale." Plaintiffs' Response at 8. In considering BOA's claims against the debtors, the plaintiffs argue, this court will "necessarily resolve whether any misrepresentations were made on these issues," given that the issues are so "closely related." Id. at 9. The plaintiffs seek only compensatory damages in connection with this claim.

Plaintiffs also seek only compensatory damages in connection with Claim 5, which asserts that BOA "breached its duty of good faith and fair dealing by failing to fund construction draw requests, as required under the Borrowers' Loans, failing to honor the June 2010 Forbearance Agreement, refusing to consummate the amendment to the AAC Retail Line, engaging CBRE to market the Borrowers' Loans, and disseminating, in bad faith, information not generally available to the public regarding the Borrowers' Loans." Complaint ¶ 231.

In Claim 8, plaintiffs assert that BOA induced them to enter into the "June 30, 2009 Modification Package" in reliance on BOA's misrepresentation that BOA would then consummate an amendment to the AAC Retail Line, but then refused to consummate the amendment. In addition, plaintiffs assert that BOA fraudulently induced their agreement to participate in the swap transactions, ultimately injuring plaintiffs by subjecting them to higher interest rate risk, incurring additional expenses, and being subject to prepayment penalties. These allegations also support Claim 9, for breach of fiduciary duties. With regard to both Claims 8 and 9, plaintiffs allege that

14

BOA's misrepresentations and material omissions caused plaintiffs to enter into these agreements and to incur resulting damages in the context of interest and fees. Both of these claims seek only damages and also pertain to the swap agreements dispute, which the parties agree is not core.

The court agrees with the plaintiffs that the factual and legal issues arising in Claims 3, 5, 8 and 9 are closely related to those that arise in Claims 1 and 2, but more significant is the fact that this group of claims seeks only damages in the nature of recovery that would augment the plaintiffs' estates. Resolution of these claims is not necessary to the court's allowance or disallowance of BOA's claims and, it follows, the estates' counterclaims. A finding of misrepresentation, breach of implied duty of good faith and fair dealing, fraudulent inducement, or a breach of fiduciary duties would not in and of itself determine the existence or timing of a default, which in this case is determinative of the correct interest rate, amount of attorneys fees, and late fees – all components of BOA's proof of claim.[5] Accordingly, Claims 3, 5, 8, and 9 are non-core and will be referred to arbitration in accord with the parties' contractual provisions and general federal policy in favor of arbitration. See TP, Inc., 479 B.R. at 382.

**Claims 13 and 14**

In both Claim 13 (which alleges breach of implied duty of good faith and fail dealing which pertains primarily to the swap agreements) and, to a more comprehensive extent, Claim 14 (which alleges violation of N. C. Gen. Stat. § 75.1.1 which pertains to the swap agreements and to virtually all other agreements as well), plaintiffs contend that BOA's course of conduct in its dealings with

---

[5] A finding of misrepresentation, breach of implied duty of good faith and fair dealing, fraudulent inducement, or a breach of fiduciary duties could uncover the *reason* for a default, if any occurred, but not the existence or non-existence of the default itself. In this proceeding, that factual question is determinative of the extent to which the asserted claims are constitutionally core.

15

the plaintiffs was deceptive, immoral, unethical, oppressive, or unscrupulous, as well as unfair, and for those reasons violated the state unfair and deceptive trade practices statute to the extent these actions were in and affected commerce. Because the conduct and actions constitute "substantial aggravating circumstances attendant in breach of other legal obligations," plaintiffs seek treble the amount of their actual damages. Complaint ¶¶ 297-305.

Like all of the claims discussed herein with the exception of Claims 1 and 2, these claims do not satisfy the Stern test and are not constitutionally core because the resolution of these claims is not necessary to a determination of BOA's proofs of claim. Accordingly, Claims 13 and 14 will be referred to arbitration.

## CONCLUSION

For the foregoing reasons, the motion to abstain is **DENIED**. The motion to compel arbitration is **DENIED** as to Claims 1 and 2. In light of the federal policy in favor of arbitration and the fact that the court finds the remaining claims (Claims 3, 5, 8, 9, 13 and 14) to be non-core, the motion to compel arbitration is **ALLOWED** as to those claims. The court does not at this time address what it predicts will be the next issue, which is the protocol by which these claims may best be resolved in two different forums. The court commends the parties to seek resolution of that issue on their own, with an eye toward efficiencies and fairness, but the court will, of course, be available to direct that determination if necessary, upon proper motion.

**SO ORDERED.**

### END OF DOCUMENT